UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERMEAL WHITE,  Case No. 1:19-cv-1007

    Plaintiff,

    vs  Dlott, J.
Bowman, M.J.

WARDEN RON ERDOS, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

This civil action is now before the court on Plaintiff's motion for summary judgment (Doc. 51) and Defendant Corrections Officer Parish's cross motion for summary judgment (Doc. 58) and the parties' responsive memoranda. (Docs. 56, 57, 63).

**I. Background and Facts**

Jermeal White, an inmate in the custody of Ohio Department of Rehabilitation and Correction (DRC), alleges that on August 17, 2019, while incarcerated at the Southern Ohio Correctional Facility (SOCF), Corrections Officer Parish used excessive force against him. According to the complaint, Defendant Parish "used so much extreme force" on Plaintiff "for no reason at all." (Doc. 1, Complaint, PageId# 5). In the hallway, Defendant John Doe (as originally name in the Complaint, then amended to add Defendant Parish) "snapped Plaintiff's right elbow our place (sic)" (Id. at PageId# 6). According to Plaintiff, "the use of force was for no reason at at (sic) all. (Id.). Then, according to Plaintiff, he "was refused medical attention." (Id.). When Plaintiff was "in a new cell on constant watch after the use of force, the nurse and S.R.T came to [his] cell, Plaintiff told the nurse his injuries, the nurse just walked off." (Id.). Plaintiff is seeking a prison transfer by way of a

permanent injunction and compensatory damages in the amount of $400,000.00 against each defendant jointly and severally. (Id. at PageId# 11).

The incident was captured on video by a planned use of force videographer, Corrections Officer Cooper, it is thirteen minutes and thirty seconds long. (Doc. 58, Ex. A; SOCF DCSF4959). In the video, Lieutenant Eaches opens by giving a brief of the situation to the videographer—detailing that this was a planned use of force to extract Plaintiff from his cell. (Doc. 58, Ex. A; SOCF DCSF4959 00:00-00:31). The extraction team then introduces themselves and specifies their role in the extraction—Corrections Officer King, negotiator; Corrections Officer Whitman, shield; Defendant Parish, upper right; Corrections Officer Welch, upper left; Corrections Officer Davis, lower right; Corrections Officer Justice, lower left; and Nurse Hart, medical. (Id.,Ex. A; SOCF DCSF4959 00:31-1:12). Lieutenant Eaches then comes back into the video frame to describe what is planned for this extraction. (Id., Ex. A; SOCF DCSF4959 1:12-1:22). The extraction team then walks to Plaintiff's cell. (Id., Ex. A; SOCF DCSF4959 10:22-1:39). Corrections Officer King, the negotiator, speaks to Plaintiff and asks if he is going to comply with orders to move cells to which Plaintiff states he will be compliant. (Doc. 58, Ex. A; SOCF DCSF4959 1:39- 1:56). Plaintiff is then cuffed by members of the extraction team. (Ex. A; SOCF DCSF4959 1:56- 2:56).

Following his removal from his cell, there is a largely unremarkable escort of Plaintiff to a different cell by the extraction team. (Doc. 58, Ex. A; SOCF DCSF4959 2:56-7:39). Plaintiff is then uncuffed, strip searched, and given different clothing. (Doc. 58, Ex. A; SOCF DCSF4959 7:39-9:35). Plaintiff is then cuffed and escorted to a third cell. (Doc. 58, Ex. A; SOCF DCSF4959 9:35- 11:34). Plaintiff is placed outside of the third cell and

uncuffed while a member of the extraction team searches the third cell. (Doc. 58, Ex. A; SOCF DCSF4959 11:34-12:34). Nurse Hart then approaches the cell door and asks Plaintiff if he needs medical attention; Plaintiff denies medical attention. (Doc. 58, Ex. A; SOCF DCSF4959 13:19-13:25). Lieutenant Eaches concludes the video of the planned use of force. (Doc. 58, Ex. A; SOCF DCSF4959 13:25-13:30).

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id*. at 252.

3

*B. Applicable Law*

As detailed above, Plaintiff asserts that Corrections Officer Parish used excessive force against him in violation of his rights under the Eight Amendment. The Eighth Amendment prohibition on cruel and unusual punishment protects prison inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.; see *also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995 (1992). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

On the other hand, the objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. As the Supreme Court of the United States has stated, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10; *Rafferty v. Trumbull Cty.,* 915 F.3d 1087, 1094 (6th Cir. 2019). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind" and excludes "de minimis uses of physical force." *Wilkins v.*

4

*Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting Hudson, 503 U.S. at 9-10). In addition, this Court has recognized how the Sixth Circuit gives deference to prison officials using force in maintaining institutional discipline and security. *See, e.g., Anderson v. Lawless*, S.D. Ohio No. 2:17-cv-1057, 2017 U.S. Dist. LEXIS 209814, at *17 (Dec. 21, 2017) (citing *Combs*, 315 F.3d at 556-57). On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contacts actionable as assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557.

C. *Defendant Parish is entitled to judgment as a matter of law with respect to Plaintiff's claims under the Eighth Amendment*

In his motion for summary judgment, Plaintiff claims, *inter alia,* that while he was being cuffed to be escorted to another cell, Defendant Parish used "extreme force for no reason, Plaintiff was in compliance with the required procedure to cuff up and did not pose any threat to his self or staff." (Doc. 51 at 5). Plaintiff further contends that Defendant Parish used too much force while escorting Plaintiff from his cell that "Plaintiff's right elbow was snapped out of place, and he suffered pain in his arms and hands…" Id. Plaintiff claims that the use of force reports were false and that he was refused medical attention after he complained about his injuries. Id. Plaintiff further claims that the video footage of this incident supports his allegations. Plaintiff's contentions are wholly unsupported.

Defendant Parish asserts that there was no use of force in this matter. He further asserts that the video and declarations demonstrate that Plaintiff White was escorted in an unremarkable fashion. (Doc. 58, Ex. A; SOCF DCSF4959). The undersigned agrees.

As noted above, Plaintiff was escorted to a different cell by the extraction team. (Doc. 58, Ex. A; SOCF DCSF4959 2:56-7:39). He is then uncuffed, strip searched, and given different clothing. (Doc. 58, Ex. A; SOCF DCSF4959 7:39-9:35). Following this, Plaintiff is cuffed and escorted to a third cell. (Doc. 58, Ex. A; SOCF DCSF4959 9:35-11:34). Plaintiff is placed outside of the third cell and uncuffed while a member of the extraction team searches the third cell. (Doc. 58, Ex. A; SOCF DCSF4959 11:34-12:34). Plaintiff is then placed in the third cell, his hands are uncuffed, and the cuff port is closed and locked. (Doc. 58, Ex. A; SOCF DCSF4959 12:34-13:19). Nurse Hart then approaches the cell door and asks Plaintiff if he needs medical attention; Plaintiff denies medical attention. (Doc. 58, Ex. A; SOCF DCSF4959 13:19-13:25). Lieutenant Eaches concludes the video of the planned use of force. (Doc. 58, Ex. A; SOCF DCSF4959 13:25-13:30).

There is no force used in this escort. (Doc. 58, Ex. C; U of F Report, p.8, 15). As such, according to Defendants, at no point during the escort does Plaintiff complain of pain, nor does he ask for medical attention after he is placed in the third cell. Indeed, when asked by Nurse Hart if he needed medical attention, Plaintiff denied that he did. (Id.; Ex.C; U of F Report, p.18, 24).

In light of the foregoing, the undersigned finds that Plaintiff failed to establish any violation of his Eighth Amendment Rights. According, Defendant Parish is entitled to judgment as a matter of law in this regard.

6

*D. Qualified Immunity*

Assuming Plaintiff has met his burden of establishing a violation of his Eighth Amendment rights, which he has not, Defendant Parish would also be entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183 (1984). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proof to show that the defendant is not entitled to that defense. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

Here, as detailed above, there is no evidence that Defendant Parish used excessive force against Plaintiff. To the contrary, the evidence establishes that Plaintiff was cuffed and escorted to another cell without incident. As such, Plaintiff has failed to establish a violation of his constitutional rights. Accordingly, the undersigned finds that Defendant Parish is immune from Plaintiff's claim against him.

III. **CONCLUSION**

In light of the foregoing, **IT IS RECOMMENDED THAT** Plaintiff's motion for summary judgment (Doc. 51) be **DENIED;** Defendant Parish's cross motion for summary judgment (Doc. 58) be **GRANTED;** and Plaintiff's claims against Defendant Parish be **TERMINATED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JERMEAL WHITE, | Case No. 1:19-cv-1007 |
| Plaintiff, | |
| | Dlott, J. |
| vs | Bowman, M.J. |
| WARDEN RON ERDOS, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).