IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JERMEAL WHITE, | : | Case No. 1:19-cv-1007 |
| Plaintiff, | : | |
| v. | : | Judge Susan J. Dlott |
| | : | **ORDER ADOPTING REPORTS AND RECOMMENDATIONS** |
| RON ERDOS, et al., | : | |
| Defendants. | : | |

This matter is before the Court on Objections to the Magistrate Judge's Report and Recommendation recommending that Plaintiff Jermeal White's Motion for Summary Judgment (Doc. 51) be denied and Defendant Corrections Officer Tyler Parrish's Cross-Motion for Summary Judgment (Doc. 58[1]) be granted and White's claims against Corrections Officer Parish be terminated (Doc. 80). Also before the Court is the Magistrate Judge's Report and Recommendation recommending that Plaintiff's pro se Motion for Injunctive Relief (Doc. 65) be denied (Doc. 77), to which no objections were filed. For the reasons that follow, the Magistrate Judge's Report and Recommendations (Docs. 80, 77) will be **ADOPTED**.

I. **BACKGROUND**

A. **Facts**

Jermeal White, a prisoner at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio filed this pro se 42 U.S.C. § 1983 action alleging violations of his civil rights while in custody. White alleges that on August 17, 2019, Corrections Officers Tyler Parish and Wes Welch used excessive force against him when he was handcuffed and transferred to

---

[1] Documents 57 and 58 appear to be the same filing. The Court will refer to and cite Document 58.

1

different cells. (Docs. 1, 27.) Specifically, "Wes Welch and Tyler Parish used extreme for[ce] on Plaintiff for no reason, from the cell of unit K2-1, all the way to the hallway on the walk to segregation" for "no explainable reason." (Doc. 27 at PageID 149.) White claims that "Wes Welch dislocated Plaintiff[']s right elbow, and Tyler Parish assisted Welch in the force by trying to break Plaintiff[']s left elbow and hand for no reason." (*Id.* at PageID 148.) White alleges that he was denied medical attention for his injuries when the nurse came to check on him and, after White told her of his injuries, she walked off. (Doc. 1 at PageID 11.) Plaintiff seeks injunctive relief and monetary damages. (*Id.* at PageID 12.)

### B. Procedural History

White initiated this action on November 25, 2019. On April 3, 2020, the undersigned adopted the Magistrate Judge's recommendation that White's Complaint be dismissed with prejudice pursuant to 28 U.S.C. §§ 1951(e)(2)(B) and 1915A(b)(1) with the exception of White's Eighth Amendment claims against Defendant Cynthia Davis and the unidentified John Doe officers in their individual capacities. (Doc. 14 at PageID 84; Doc. 7 at PageID 55.) Subsequently, the Court granted White leave to amend his Complaint to identify previously unidentified defendants as Corrections Officers Wes Welch and Tyler Parish.[2] (Doc. 24; Doc. 27.) On February 11, 2021, the Court adopted the Magistrate Judge's recommendation that Davis's Motion to Dismiss be granted. (Doc. 30, 33.)

On April 28, 2021, White filed a Motion for Summary Judgment against Corrections Officer Parish. (Doc. 51.) On May 21, 2021, Corrections Officer Parish filed a Response in Opposition to Summary Judgment and Cross-Motion for Summary Judgment. (Doc. 58.) White filed a Response in Opposition (Doc. 63), and Corrections Officer Parish filed both a Response

---

[2] Corrections Officer Wes Welch filed an answer on January 7, 2022. (Doc. 76.)

2

in Opposition (Doc. 66) and a Reply (Doc. 68.) On June 17, 2021, White filed a Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 65), to which Defendant Parish filed a Response in Opposition (Doc. 69).

### C. January 7, 2022 Report and Recommendation

On January 7, 2022, the Magistrate Judge issued a Report and Recommendation recommending that Plaintiff's pro se Motion for Injunctive Relief (Doc. 65) be denied (Doc. 77). White asserted in his Motion for Injunctive Relief that he is being harassed and threatened by Defendants and asks the Court to transfer him to another prison. (Doc. 65). The Magistrate Judge found that White failed to establish the necessary elements for injunctive relief, including likelihood of success on the merits. (Doc. 77 at PageID 518.) Neither party filed objections to the Magistrate Judge's Report and Recommendation. As no Objections have been filed, the Report and Recommendation recommending Plaintiff's pro se Motion for Injunctive Relief be denied (Doc. 77) is **ADOPTED**.[3]

### D. January 20, 2022 Report and Recommendation

On January 20, 2022, the Magistrate Judge issued a Report and Recommendation recommending that White's Motion for Summary Judgment be denied and Defendant Tyler Parish's Cross-Motion for Summary Judgment be granted. (Doc. 80.) The Magistrate Judge found that Corrections Officer Parish is entitled to judgment as a matter of law with respect to White's claims under the Eighth Amendment, because Plaintiff's contentions are "wholly unsupported." (Doc. 80 at PageID 530.) The Magistrate Judge relied heavily upon the video of White's escort to a new cell. (Doc. 58-1; 58-2.) She concludes the evidence demonstrates White

---

[3] On January 7, 2022, the Court received a "letter" asking the undersigned to transfer him to a new prison. (Doc. 78) The letter was received months after the Magistrate Judge's Report and Recommendation was issued. It does not raise any specific objections to the Magistrate Judge's Report and Recommendation but merely asks to be transferred to a new prison. It is therefore denied.

3

was escorted in "an unremarkable fashion" and "no force [was] used in this escort." (*Id.* at PageID 531.) The Magistrate Judge also found that White failed to demonstrate a violation of his Constitutional rights, and Corrections Officer Parish is entitled to qualified immunity. (*Id.* at PageID 532.)

White objected to the Magistrate Judge's Report and Recommendation (Doc. 81), and Corrections Officer Parish filed a Response.[4] (Doc. 82.) For the reasons that follow, the Court will **OVERRULE** White's Objections and **ADOPT** the Report and Recommendation (Doc. 80).

## II. LAW

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

---

[4] White filed a Motion to Supplement his Objections (Doc. 83), which the Court denies. The filing is redundant of arguments already raised. Nothing in the supplement changes the Court's conclusion that the Report and Recommendation should be adopted.

4

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Finally, when cross motions for summary judgment have been filed, "the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

Magistrate judges are authorized to decide dispositive and non-dispositive matters pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The district judge must conduct a *de novo* review of a magistrate judge's recommendation on a dispositive motion. *Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). "The district court need not provide *de novo* review where the objections are frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (cleaned up).

## III. ANALYSIS

### A. White's Objections

White objects to the Magistrate Judge's Report and Recommendation that his Motion for Summary Judgment be denied and Correction Officer Parish's Cross-Motion for Summary Judgment be granted. White argues the Magistrate Judge "did not fully address the facts of the video camera" and that Corrections Officer Parish and his partner "applied immediate extreme force when removing Plaintiff from the f[ir]st cell, and Defendant and his partners still proceeded with the extraction force process as they escorted Plaintiff all the way down the [...] hall-way bending Plaintiff['s] hands and arms with so much extreme force, to the second cell, and to the third cell." (Doc. 81 at PageID 536.) He also claims the medical report is not consistent with the video. Finally, White argues that the fact that use of force reports were prepared prove that excessive force must have been used in his extraction. As discussed below, White's arguments lack merit.

### B. Eight Amendment Violation

White alleges his Eighth Amendment rights were violated during his cell transfer. As appropriately cited by the Magistrate Judge, "[t]he Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "But not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). At times, "maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Id.* (citing *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). "Factors to consider in determining

6

whether the use of force was wanton and unnecessary include the extent of injury suffered by an inmate, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Combs*, 315 F.3d at 556–57 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (cleaned up)).

To make out a claim under the Eight Amendment, the prisoner must satisfy both an objective and subjective component. *Cordell*, 759 F.3d at 580 (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Id.* (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *Hudson*, 503 U.S. at 7). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (citing *Williams*, 631 F.3d at 383). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* (citing *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580–81. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident." *Id.* (citing *Hudson*, 503 U.S. at 9).

### 1. White's Evidence

In this case, the parties take opposite views of what occurred during the extraction team's escort of White to a new cell. White maintains via his statements that "extreme" force was used against him for the entirety of being escorted to two different cells. He argues the fact that use of

force reports were prepared prove this, and he suggests the prison reports and/or medical report describing no injury may have been fabricated. White relies upon two "unsworn Declaration[s]" in which he describes the events of August 17, 2019. (White Decl. 1, Doc. 51-1; White Decl. 2, Doc. 63-1.) He describes:

> [E]xtreme force was immediately used against me for no reason by Tyler Parish and Wes Welch all the way from the cell to the hallway snapping my right elbow out of place and causing serious pain to my hands and arms. Also Defendant Tyler and Welch had mask[s] on covering their entire face so I cannot pin point w[h]ich one of them snapped my elbow out [of] place, but both of them did use very serious extreme for[ce] against me in this matter for no explainable reason.

(Doc. 51-1 at PageID 267.) He asserts "the use of force reports in this matter are fabricated and false" and he was "refused medical attention." (*Id.*) He states that the "video records will completely prove the facts of this declaration and my motion for summary judgment." (*Id.* at PageID 268.)

In responding to Defendant's Cross-Motion for Summary Judgment, White submitted a second "unsworn Declaration," which states that "the extraction team for no reason [. . .] used extreme force on me all the way from the cell on the walk in the hallway to J3-unit snapping my right elbow out of place." (Doc. 63-1 at PageID 451.) After he was searched and dressed, "immediate extreme force was applied on me again on the walk from J3-3 to J3-41, but before I was able to enter the cell Defendant placed me on the wall and bent my arms and hands all the way up to my back." (*Id.*) He claims that "[o]nce I entered the cell I told the staff and the nurse that I think my elbow was snapped out of place." (*Id.*) He "told the nurse and staff my injuries who were all standing in front of my cell" after the video ended. (*Id.*)

### 2. Correction Officer Parish's Evidence

On the other hand, Corrections Officer Parish contends a forced extraction was planned, but because White was cooperative, no force was used in the escort. In support of this position,

8

Corrections Officer Parish relies upon a video of the escort, which the Magistrate Judge found to be conclusive on the question of whether excessive force was used. (Docs. 58-1; 58-2).

The undersigned reviewed the thirteen-minute, thirty-second video of the escort of White to two different cells. (Doc. 58-1.) The video opens with Lieutenant Eaches introducing himself and the "five-man team" that was designated to escort inmate White to a new unit after White refused multiple orders to "cuff up" and move out of his cell. (Doc. 58-1:10–:30.[5]) Five officers and a nurse introduce themselves and state their role in the extraction: Officer King, negotiator; Officer Whitman, shield; Officer Welch, upper left; Officer Davis, lower right; Officer Justice, lower left, and Nurse Hart, medical. (*Id.* at :30–1:17.) Lieutenant Eaches then states the purpose of the escort was to get White to "cuff up" and move cell locations. (*Id.* at 1:17.)

The video tracks the extraction team walking down a flight of stairs and approaching White in his cell. Officer King approaches White's cell and speaks to White about coming out of his cell and being handcuffed. (*Id.* at 1:31–2:01.) White appears to be compliant. The rest of the extraction team approaches and stands in front of White's cell. An officer yells for White's cell to be opened, and White is handcuffed. (*Id.* at 2:01–3:01.) White being handcuffed is partially obscured by the location of the camera and officers standing in front of the cell. White is then escorted by two officers up the stairs. (*Id.* at 3:15.) Following this, the camera shows the officers walking down a hallway with White. An officer is stationed at each of White's elbows. There is low talking and the walk is quiet and uneventful. (*Id.* at 3:15–5:33.) The group then approaches a new unit, walks down a stairway, and White is escorted into a new cell, where he is uncuffed. (*Id.* at 7:15–8:12.) White is strip-searched while unhandcuffed

---

[5] All time estimates are approximate based upon the undersigned's review of the video.

9

and in the new cell and then given new clothing to change into, at which point he changes clothing and shows no indication of any injury to his elbow. White is compliant with officers' orders. (*Id.* at 8:12–9:46.) White is then re-handcuffed by officers from outside of the cell. (*Id.* at 9:46–10:35.) White's cell open and he is escorted upstairs, with officers again at each elbow. (*Id.* at 10:35–11:20.) The extraction team and White then travel down a stairwell, through a hallway and to White's new cell, where White is handcuffed outside the cell and his hands are held upwards behind his back. (*Id.* at 11:20–12:20.) An officer checks the cell, and White is then escorted into his new cell. (*Id.* at 12:30.) The cell door closes and Nurse Hart approaches the cell and asks, "You good?" to which White appears to give an affirmative response. (*Id.* at 12:37.) The video concludes.

In addition to the video, Corrections Officer Parish also relies upon the Ohio Department of Rehabilitation and Correction, Deputy Warden of Operations Review of Use of Force file. (Doc. 58-3 at PageID 392–417.) Reports and Medical Exam Reports were prepared by Corrections Officers Whitman, Davis, Parish, Welch, Justice, Cooper, Kim, Lieutenant Eaches, and Nurse Hart in response to the escort. (*Id.*) Corrections Officers Whitman and Davis each described White as compliant after the extraction team arrived. (Doc. 58-3 at PageID 397–400.) In her Medical Exam Report, Nurse Hart stated of White: "Pt. states 'I'm fine, no injuries'. States 'No' when asked if any treatment was needed[.]" (*Id.* at PageID 409.)

### 3. Analysis

Based on the evidence before it, White's position that extreme force was used against him for the entirety of his escort cannot be believed by a reasonable jury. The video shows an

uneventful cell transfer and the undersigned witnessed no evidence of force. The video is objective evidence that disproves "extreme force" was used against White for the entirety of his escort. Although at times the view of White is obstructed, the audio is clear the entire time, and there is no evidence of distress from White at any time. He does not cry out, yell, or complain of pain. He is compliant and cooperative. White shows no sign of injury when he demonstrates he can move his arms/elbow when he changes clothing for his strip search at the second cell. White also indicates that he is fine when the nurse approaches his cell at the conclusion of extraction.

The other record evidence also demonstrates this escort involved no use of force. Reports describe White as compliant and Nurse Hart reported White stated he had no injuries and did not need medical treatment. To the extent he believes documents were forged, he has submitted no evidence to support that theory. Thus, despite the limitations of the video, it certainly negates White's statement that extreme force was used on his for his entire escort, and there is no evidence undermining the credibility of the use of force reports prepared by Officers and the nurse at the prison.

Although self-serving testimony, such as White's declarations in this case, can create a genuine dispute of material fact, they fail to do so where they are "blatantly and demonstrably false." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020) (citing *Scott*, 550 U.S. at 380 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence; *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (assuming as true on summary judgment the nonmoving party's version of events unless that version is "totally implausible")).

Here, the Court was presented with competitive narratives. But upon close inspection, no genuine dispute of facts exists. White's version of events—that extreme force was used against him for the entirety of his escort, causing his right elbow to snap out of place—is not plausible when considering the contrary video evidence, use of force reports, and medical examination report. Thus, the undersigned agrees with the Magistrate Judge's determination that "[t]here is no force used in this escort[,]" and White failed to establish his Eighth Amendment rights were violated. (Doc. 80 at PageID 531.)

### C. Qualified Immunity

The Court also agrees that Corrections Officer Parrish is entitled to qualified immunity, and White failed to carry his burden that qualified immunity would not apply. The doctrine of qualified immunity shields government officials from civil damages provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides immunity from suit, not simply a defense to liability. *Id.* To determine whether qualified immunity applies, courts apply a two-pronged test: (1) do the facts alleged, taken in the light most favorably to the party alleging the injury, establish a violation of a constitutional right, and (2) was the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled on other grounds*, *Pearson*, 555 U.S. 223. "An answer of 'yes' to both questions defeats qualified immunity, while an answer of 'no' to either question results in a grant of qualified immunity." *Haley v. Elsmere Police Dep't*, 452 F. App'x 623, 626 (6th Cir. 2011). Courts can examine either issue first based on which path will best facilitate the fair and efficient disposition of the case before it. *Pearson*, 555 U.S. at 242. Although qualified immunity is an affirmative defense,

"the burden is on the plaintiff to demonstrate that the official[] [is] not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Thus, the plaintiff bears the burden of proving both elements of the *Saucier* test. *See Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

After reviewing all evidence in this case, the undersigned agrees with the Magistrate Judge's conclusion that the evidence does not establish Corrections Officer Parish used excessive force against White when he was escorted to a new cell. Thus, White failed to establish a violation of his Constitutional rights. As such, Corrections Officer Parish is entitled to qualified immunity.

### IV. CONCLUSION

For the reasons set forth herein, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation denying White's pro se Motion for Injunctive Relief. (Doc. 77.) The Court **OVERRULES** White's Objections (Doc. 81) and **ADOPTS** the Magistrate Judge's Report and Recommendation that White's Motion for Summary Judgment be denied and Defendant Parish's Cross-Motion for Summary Judgment be granted and White's claims against Defendant Parish be terminated (Doc. 80).

**IT IS SO ORDERED.**

Dated: *March 30, 2022*

*Susan J. Dlott*
Judge Susan J. Dlott
United States District Court